

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

*Samika N. Boyd*
*Assistant United States Attorney*
*Samika.Boyd@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4878*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

cjr:7-14-2020

July 15, 2020

FILED ENTERED
LOGGED RECEIVED
AUG 12 2020
AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY
NM

**Via E-Mail and Hand Delivery**
C. Justin Brown, Esq.
brown@cjbrownlaw.com
Brown Law
1 N. Charles Street, Suite 1301
Baltimore, Maryland 21201

Re: Plea Agreement in the Case of
*United States v. Kirk Gross a/k/a White Boy*
Criminal No.

Dear Mr. Brown:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kirk Gross a/k/a White Boy (hereinafter the "defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have the defendant execute it in the spaces provided below. If this offer has not been accepted by July 31, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offenses of Conviction

1. The defendant agrees to plead guilty to Counts One, Two, and Three of the Information. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute fentanyl, heroin, and cocaine, in violation of 21 U.S.C. § 846. Count Two charges the defendant with possession with intent to distribute fentanyl, heroin, and cocaine, in violation of 21 U.S.C. § 841(a)(1). Count Three charges the defendant with possession of firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g). The defendant admits that the defendant is, in fact, guilty of the offenses and will so advise the Court.

## Elements of the Offenses

2. The elements of each offense to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

*Count One*

a. In or about July 2018, and continuing through in or about April 2019, in the District of Maryland, the defendant knowingly, intentionally, and willfully agreed with one or more persons to distribute and possess with intent to distribute 400 grams or more of fentanyl, 1 kilogram or more of heroin, and 500 grams or more cocaine; and

b. The defendant knowingly and voluntarily entered into that agreement, not by accident or mistake.

*Count Two*

a. The substances were in fact fentanyl, heroin, and cocaine;

b. On or about April 5, 2019, in the District of Maryland, the defendant knowingly and intentionally possessed 400 grams or more of fentanyl, 1 kilogram or more of heroin, and 500 grams or more cocaine; and

c. The defendant possessed fentanyl, heroin, and cocaine with the intent to distribute them.

*Count Three*

a. The defendant was previously convicted of a crime punishable by imprisonment for a term exceeding one year;

b. The defendant knew that he was prohibited from possessing a firearm and ammunition as the result of a previous felony conviction;

c. On or about April 5, 2019, in the District of Maryland, the defendant knowingly possessed the firearm and ammunition described in Count Three of the Information after a felony conviction; and

d. The defendant's possession of the firearms and ammunition described in Count Three of the Information was in and affecting interstate commerce.

## Penalties

3. The maximum penalties provided by statute for the offenses to which the defendant is pleading guilty are as follows:

| Count | Statute | Maximum Term of Imprisonment | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | Life (minimum of 10 years) | minimum 4 years; maximum 5 years | $10,000,000 | $100 |
| 2 | 21 U.S.C. § 841(a)(1) | Life (minimum of 10 years) | minimum 4 years; maximum 5 years | $10,000,000 | $100 |
| 3 | 18 U.S.C. § 922(g) | 10 years | 3 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which that term of imprisonment will be served by the defendant.

b. Supervised Release: If the Court orders a term of supervised release, and the defendant violates the conditions of supervised release, the Court may order the defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The defendant may be required to pay interest if the defendant does not pay the fine when it is due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to

collect on the total amount of the debt as provided by law. Until the debt is paid, the defendant agrees to disclose all assets in which the defendant has any interest or over which the defendant exercises direct or indirect control. Until the money judgment is satisfied, the defendant authorizes this Office to obtain a credit report in order to evaluate the defendant's ability to pay, and to request and review the defendant's federal and state income tax returns. The defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

4. The defendant understands that by entering into this Agreement, the defendant surrenders certain rights as outlined below:

a. If the defendant had pled not guilty and persisted in that plea, the defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

b. If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the defendant could be found guilty of any count. The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the defendant went to trial, the Government would have the burden of proving the defendant guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the Government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If the defendant wanted to call witnesses in defense, however, the defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The defendant would have the right to testify in the defendant's own defense if the defendant so chose, and the defendant would have the right to refuse to testify. If the defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the defendant's decision not to testify.

e. If the defendant were found guilty after a trial, the defendant would have the right to appeal the verdict and the Court's pre-trial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the defendant understands that the defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the defendant makes during such a hearing would not be admissible against the defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the defendant's plea of guilty, the defendant will be giving up the right to file and have the Court rule on pre-trial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the defendant guilty.

Advisory Sentencing Guidelines Apply

5. The defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

7. This Office and the defendant further agree to the following applicable sentencing guideline factors:

a. Pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4), **the base offense level for Count One is a level 32** to account for 1.4 kilograms of heroin mixed with fentanyl and 1.1 kilograms of cocaine. There is a **two-level increase** in the defendant's base offense level for Count One, because of the defendant's possession of firearms. See U.S.S.G. § 2D1.1(b)(1). Therefore, **the adjusted base offense level for Count One is a level 34.**

b. Pursuant to U.S.S.G. § 2D1.1(c)(4), **the base offense level for Count Two is a level 32** to account for 1.4 kilograms of heroin mixed with fentanyl and 1.1 kilograms of cocaine.

c. Pursuant to U.S.S.G. § 2K2.1(a)(4), **the base offense level for Count Three is a level 20**. There is a **two**-level increase, because the offense involved four firearms. See U.S.S.G. § 2K2.1(b)(1)(A). So, **the adjusted offense level for Count Three is a level 22.**

d. Pursuant to U.S.S.G. § 3D1.2(a), Counts One, Two, and Three are grouped together in a single Group. As a result, **the offense level applicable to the Group is a level 34.** See U.S.S.G. § 3D1.3(a).

**Thus, the defendant's adjusted offense level is a level 34.**

e. This Office does not oppose a 2-level reduction in the defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the defendant's timely notification of the defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

**Accordingly, the defendant's final offense level is a level 31.**

8. There is no agreement as to the defendant's criminal history and the defendant understands that the defendant's criminal history could alter the defendant's offense level. Specifically, the defendant understands that the defendant's criminal history could alter the final offense level if the defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income.

9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures, or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

10. At the time of sentencing, this Office will be free to recommend any sentence that is reasonable under the applicable factors set forth in18 U.S.C. § 3553(a).

11. At the time of sentencing, this Office and the defendant reserve the right to advocate for a reasonable period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

12. This Office and the defendant also reserve the right to bring to the Court's attention all information with respect to the defendant's background, character, and conduct that this Office

or the defendant deems relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Information.

Public Benefits in Drug Cases

13. The defendant understands and acknowledges that under 21 U.S.C. §§ 862 and 862a, a person who has been convicted of a federal offense involving the distribution or possession of controlled substances may be denied certain federal and state benefits such as loans, grants, or food stamps.

Waiver of Appeal

14. In exchange for the concessions made by this Office and the defendant in the Agreement, this Office and the defendant waive their rights to appeal as follows:

a. The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the defendant's conviction on the ground that the statutes to which the defendant is pleading guilty are unconstitutional, to the extent such a challenge can be legally waived, or on the ground that the admitted conduct does not fall within the scope of the statutes to the extent that such challenge can be legally waived.

b. The defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i. The defendant reserves the right to appeal any term of imprisonment to the extent it exceeds any sentence above the high end of the advisory guidelines range; and

ii. This Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence below the low end of the advisory guidelines range.

c. The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned

matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

15. The defendant agrees to forfeit to the United States all of the defendant's right, title, and interest in the following property that constitute proceeds directly traceable to proceeds of the offenses to which the defendant has agreed to plead guilty or personal property involved in an offense to which the defendant has agreed to plead guilty:

a. a SCCY Industries CPX-2 semi-automatic 9mm pistol bearing serial number 632077 seized from a black bag in the hallway closet of the defendant's Owings Mills residence on or about April 5, 2019;

b. a SCCY Industries CPX-2 semi-automatic 9mm pistol bearing serial number 534817 seized from a shoe box in the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

c. a Taurus PTIII Millennium G2 semi-automatic 9mm pistol bearing serial number TKW08741 seized from a black bag in the hallway closet of the defendant's Owings Mills residence on or about April 5, 2019;

d. a Taurus PT140 Millennium G2 semi-automatic 9mm pistol bearing serial number SKS89240 seized from a shoe box in the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

e. Approximately one (1) magazine of .40 S&W seized from a black bag in the hallway closet of the defendant's Owings Mills residence on or about April 5, 2019;

f. Approximately one (1) magazine of 9mm Luger seized from a shoe box in the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

g. Approximately eight (8) cartridges of .40 S&W seized from a shoe box in the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

h. Approximately twelve (12) cartridges of 9mm Luger seized from a shoe box in the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

i. Approximately five (5) magazines of 9mm Luger seized from a black bag in the hallway closet of the defendant's Owings Mills residence on or about April 5, 2019;

j. $8,200.00 seized from the defendant's socks on his person on or about April 5, 2019;

k. $1,806.00 seized from the defendant's pockets on his person on or about April 5, 2019;

l. $192,510.00 seized from a clothing hamper of the defendant's Pikesville residence on or about April 5, 2019;

m. $39,600.00 seized from a black bag inside the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

n. $31,005.00 seized from a shoebox in the master bedroom closet of the defendant's Pikesville residence on or about April 5, 2019;

o. $59,540.00 seized from a black backpack in the trunk of the defendant's vehicle on or about April 5, 2019;

p. $523.00 seized from a bag under the front driver's side seat of the defendant's vehicle on or about April 5, 2019; and

q. $4,063.00 seized from the center console of the defendant's vehicle on or about April 5, 2019.

16. The defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

17. The defendant agrees to assist fully in the forfeiture of the above property. The defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

18. The defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

The Defendant's Conduct Prior to Sentencing and Breach

19. Between now and the date of the sentencing, the defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the pre-sentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement; and (iii) in any criminal or civil proceeding, this Office will be free to use against the defendant all statements made by the defendant and any of the information or materials provided by the defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Federal Rule of Criminal Procedure Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the defendant to withdraw the defendant's guilty plea. The defendant acknowledges that the defendant may not withdraw the defendant's guilty plea if the Court finds that the defendant breached this Agreement.

Court Not a Party

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior

understandings, promises, or conditions between this Office and the defendant. There are no other agreements, promises, undertakings, or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the defendant fully accepts each and every term and condition of this Agreement, please have the defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: Samika N. Boyd
Samika N. Boyd
Christopher J. Romano
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8-12-20
Date

Kirk Gross
The defendant

I am the defendant's counsel. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the defendant. The defendant advises me that the defendant understands and accepts its terms. To my knowledge, the defendant's decision to enter into this Agreement is an informed and voluntary one.

8/12/20
Date

C. Justin Brown, Esq.
The defendant's counsel

**Attachment A: Statement of Facts**

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In July 2018, the United States Immigration and Customs Enforcement's Homeland Security Investigations began an investigation targeting the defendant Kirk Gross a/k/a White Boy ("defendant"), who was trafficking in fentanyl, heroin, and cocaine in Baltimore. Beginning in or about July 2018, and continuing through in or about April 2019, the defendant knowingly conspired with other persons to distribute and possess with the intent to distribute kilogram quantities of heroin, fentanyl, and cocaine.

During the investigation, investigators, through a cooperating source, made controlled purchases of narcotics from the defendant on several occasions. For instance, on August 13, 2018, the cooperating source made arrangements via phone with the defendant to purchase a quantity of narcotics from him. On the same day, the cooperating source met with the defendant, and the defendant sold a quantity of heroin mixed with fentanyl to the cooperating source.

During the investigation, investigators also obtained state-court authorization to intercept communications occurring over the defendant's cellphones. The defendant discussed the quality of the narcotics that he supplied to others during intercepted calls between he and his co-conspirators. For instance, on November 7, 2018, the defendant and a co-conspirator discussed others' feedback regarding the potency of narcotics samples that the defendant provided to the co-conspirator. The co-conspirator relayed others' feedback of a seven on a rating scale of one through ten, and the defendant expressed his expectation of those samples being at least a nine on that rating scale. The defendant asked, "It's way more than seven, I thought." The co-conspirator responded, "He said ... barely an eight." Later in the discussion, the defendant said, "This is driving me crazy 'cause I'm at eight to a nine. A nine to a seven and half is a big difference."

The defendant also discussed, planned, or agreed to engage in narcotics transactions during intercepted calls between he and his co-conspirators. For instance, on November 9, 2018, the defendant and a co-conspirator discussed the narcotics that the defendant previously supplied to the co-conspirator. The co-conspirator asked, "You gotta hold that one for me." The defendant asked, "Which one?" The conspirator responded, "The one you gave me!" The co-conspirator asked later in the discussion, "The one you gave me yesterday was the powdery shit, right?" The defendant replied, "You said that was a eight." The co-conspirator then said, "Yeah. Yeah, that was cool, that's good." The defendant clarified, "You're talking about what I just gave you, the hard and crunchy" to which the

co-conspirator confirmed, "Yes, yes." The defendant agreed to supply the co-conspirator with the requested narcotics: "I got you."

Additionally, on December 3, 2018, the defendant agreed to meet with a co-conspirator for the purpose of replenishing that the co-conspirator's narcotics supply and the co-conspirator indicated that he would pay for that supply at the time of the agreed-upon narcotics transaction. The co-conspirator asked, "What's going on, bro?" to which the defendant replied, "What's up with you, bro? Chillin?" The co-conspirator then asked, "Are you around?" The defendant replied, "Yeah, I'm around. Where you at?" The co-conspirator said, "Oh, I'm about to hop off the highway. I'm straight pay it."

On April 5, 2019, investigators arrested the defendant. During a search incident to arrest, they found and recovered $8,200.00 from the defendant's socks on his person and $1,806.00 from the defendant's pockets on his person.

On the same day, investigators executed a search and seizure warrant at two of the defendant's residences—the defendant's Owings Mills residence and the defendant's Pikesville residence. From the defendant's Pikesville residence, they seized a SCCY Industries CPX-2 semi-automatic 9mm pistol bearing serial number 534817, a Taurus PT140 Millennium G2 semi-automatic 9mm pistol bearing serial number SKS89240, one magazine of 9mm Luger, eight cartridges of .40 S&W, and twelve cartridges of 9mm Luger seized from a shoe box in the master bedroom closet. Investigators also seized $192,510.00 in a clothing hamper; $39,600.00 in a black bag inside the master bedroom closet; and $31,005.00, along with various drug ledgers, in a shoebox from the master bedroom closet.

From the defendant's Owings Mills residence, investigators located and recovered 1.4 kilograms of heroin mixed with fentanyl and 1.1 kilograms of cocaine from the rear bedroom closet after the defendant told investigators that he had some drugs in that particular location. Investigators also seized a SCCY Industries CPX-2 semi-automatic 9mm pistol bearing serial number 632077, a Taurus PTIII Millennium G2 semi-automatic 9mm pistol bearing serial number TKW08741, one magazine of .40 S&W seized, and five magazines of 9mm Luger in a black bag in the hallway closet. Investigators also found and recovered digital scales, a sifter, and a heat bag sealer from the kitchen.

During the execution of the search warrant for the defendant's Owings Mills residence, a trained and certified narcotics detection dog rendered a positive alert on the rear of the defendant's vehicle. Investigators searched the defendant's vehicle, and among the items that they seized were a black backpack containing $59,540 from the trunk, multiple cellphones from the driver side interior, $523.00 from a bag under the front driver's side seat, and $4,063.00 from the center console.

The defendant was previously convicted of at least one crime punishable by imprisonment for a term exceeding one year and knew that he was prohibited from possessing a firearm or ammunition as the result of a previous felony conviction. As a result of his previous felony conviction, the defendant lost his civil rights to possess a firearm and ammunition. Those civil rights have not been restored.

The seized pistols and ammunition were manufactured outside of Maryland, and the seized pistols are firearms within the definition under 18 U.S.C. § 921(a)(3).

SO STIPULATED:

July 15, 2020
Date

Samika N. Boyd
Christopher J. Romano
Assistant United States Attorneys

8-12-20
Date

Kirk Gross
The defendant

8/12/20
Date

C. Justin Brown, Esq.
The defendant's Counsel